Sylvia D. CARR, Plaintiff and Appellee,

v.

Dale D. CARR, Defendant and Appellant.

Civ. No. 9804.

Supreme Court of North Dakota.

Nov. 21, 1980.

Ella Van Berkom, Minot, for defendant and appellant.

Farhart, Rasmuson, Lian & Maxson, P.C., Minot, for plaintiff and appellee; argued by Judith E. Howard, Minot.

PAULSON, Justice.

Dale D. Carr appeals from an amended judgment of divorce entered by the Ward County District Court on June 20, 1980. We affirm the district court's amended judgment. Sylvia D. Carr and Dale D. Carr [hereinafter "Sylvia" and "Dale"] were married on October 11, 1958, at Fargo. Four children were born of this marriage. Two of the children are adults and are no longer dependent upon the parties. Sylvia commenced this action by a complaint dated July 3, 1979. Dale submitted an answer and counterclaimed for a judgment of divorce on August 6, 1979. The Ward County District Court issued an interim order on July 5, 1979, which directed Dale to pay

$150.00 for partial payment of attorneys' fees and costs incurred by Sylvia in the initiation of the action and directed Dale to pay $800.00 monthly for the temporary support of Sylvia and the two minor children of the parties. The district court modified its interim order on October 26, 1979, and directed Dale to pay $448.00 monthly for the support of the children.

During the course of the marriage, Sylvia experienced health problems with pregnancies and she suffered several miscarriages. Sylvia has developed serious health problems during the course of the marriage. Sylvia worked on jobs outside the home only briefly and was a housewife during the course of the marriage. Dale participated in two extramarital affairs and fathered a child as a result of one of such relationships. Although Dale promised Sylvia that such extramarital relationship would end, Dale continued this relationship up to the time of the trial. Dale worked at jobs located outside of Burlington and eventually moved to Wheatland, Wyoming, where he built a home and lived with his mistress. During the course of Dale's employment away from home, he mailed support payments to Sylvia for the care of Sylvia and their children.

During their marriage, Dale and Sylvia acquired property in North Dakota and in Wyoming. The district court's amended judgment substantially provided for the following distribution of the property:

1. Dale was directed to execute a wage assignment of his salary in the amount of $300.00 per month;

2. Dale was directed to pay arrearages under the interim order of the district court;

3. Sylvia received the proceeds of the sale of the family home in Burlington, i. e., $22,780.00;

4. Dale was directed to convey one-half of his interest in Labco stock to Sylvia;

5. Dale was directed to execute any necessary documents to effectuate Sylvia's assumption of control over the home in Wyoming which was ordered to be sold;

6. As of June 1, 1982, Dale was directed to pay to Sylvia as alimony ten percent of Dale's gross salary each month for a period of one hundred eight months;

7. Sylvia received the sole ownership of a 1977 Oldsmobile automobile;

8. Dale received the sole ownership of a Teton camper; and

9. Dale was directed to return to Sylvia several items of personal property and personal records. Each party received several items of personal property.

Two issues are presented for our determination. The issues are as follows:

1. Whether or not the district court's division of property was clearly erroneous; and

2. Whether or not the district court's award of alimony was proper.

### I.

Dale contends that the district court's division of property was clearly erroneous. In *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977), we held that the trial court's determinations on matters of child support, alimony, and division of property are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous. Under Rule 52(a) of the North Dakota Rules of Civil Procedure, findings of fact are clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court.[1] *Eakman v. Robb*, 237 N.W.2d 423 (N.D. 1975).

---

1. *Larson v. Larson*, 234 N.W.2d 861, ' 3 of Syll. (N.D.1975).

In determining the division of property between the parties in a divorce action, the trial court, in exercising its sound discretion, must consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, and whether accumulated or acquired before or after the marriage; and such other matters as may be material. *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 197 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

## RESPECTIVE AGES AND THE EARNING ABILITY OF EACH OF THE PARTIES

At the time of trial Dale was 41 and Sylvia was 39 years of age. There is a disparity between the parties as to the earning ability of each. Dale possesses many employable skills and was employed almost continuously during the parties' marriage. Dale had been employed continuously by the A & H Reynolds Company for six years, but had lost his job three weeks before the trial due to inattention on the job. On the other hand, Sylvia has no special training and she worked outside the home only briefly after the parties were married. Sylvia has been employed as a salesclerk since this action was commenced but her job is temporary in nature. Dale's gross wages were $22,000.00 in 1976; $33,-000.00 in 1977; $41,000.00 in 1978 and $30,-000.00 in 1979.

## DURATION OF THE MARRIAGE AND THE CONDUCT OF THE PARTIES

At the time of the trial, Dale and Sylvia had been married for 21½ years. Sylvia had remained in the home all of those years to take care of the family. Sylvia experienced problems in pregnancies and suffered several miscarriages. These problems prompted a reluctance on Sylvia's part to become pregnant. Dale was involved in extramarital relationships and a child was born as a result of one of such relationships, which Dale continued at the time of trial despite his repeated assurances to Sylvia that such relationship would end. In the month of May of 1979, Sylvia moved to Wyoming to live with Dale because Dale had assured her that his extramarital relationship had ended. Dale, however, continued the extramarital relationship and he soon ordered Sylvia to leave and secure a divorce. Sylvia did not condone these extramarital relationships.

In 1974, the family home in Burlington was threatened with a flood and Sylvia and the children were ordered to evacuate the home. Dale did not assist Sylvia in the evacuation effort and Sylvia turned to her family for assistance. For a period of six months Sylvia's brother supported Sylvia and the children. Although Dale did financially contribute to the family's support for extended periods of time, initially the level of financial support was not commensurate with Dale's increase in income or the family's needs.

## THE PARTIES' STATION IN LIFE AND THE CIRCUMSTANCES AND NECESSITIES OF EACH

The testimony at trial revealed that the monthly rent for the housing needs of Sylvia and the minor children is $375.00. Sylvia was ordered to assume the debt on the car which involves payments of $173.79 per month. Prior to the time of the trial, Dale's monthly income totaled $2,447.00. Sylvia submitted an affidavit of her financial statement which revealed that her monthly expenses totaled $1,200.00. However, Sylvia's rent expenses and the car payments increased this figure to the sum of $1,498.79 per month. A complicating factor in this divorce is the fact that Dale must contribute $250.00 per month to support the child born as a result of his extramarital relationship. Dale testified that his monthly expenses totaled $1,444.00. Both Dale and Sylvia are high school graduates.

## THE HEALTH AND PHYSICAL CONDITION OF THE PARTIES

Dale's testimony indicated that he suffered from a severe case of ulcers which may require corrective surgery. Dale is a member of a union and his medical insurance plan will pay for the costs of the surgery even though at the present time Dale is unemployed. Sylvia suffers from back problems which began with the birth of the last child born to the parties. Her back problem has resulted in Sylvia's hospitalization at times. Sylvia has also experienced problems with ulcers. No medical testimony was submitted by either Dale or Sylvia to support or contradict their assertions as to health problems which both parties testified to at trial.

## THE PARTIES' FINANCIAL CIRCUMSTANCES AS SHOWN BY THE PROPERTY OWNED AT THE TIME, ITS VALUE AT THAT TIME, AND ITS INCOME–PRODUCING CAPACITY

Both Dale and Sylvia entered into the marriage with no real property and with little personal property. At the time of the trial the parties' home in Burlington had been sold and the proceeds of the sale totaled $22,780.00. Dale had acquired a spacious home in Wheatland, Wyoming. The home was built upon a site consisting of two lots which were acquired for the sum of $12,000.00 in 1978. The materials in the home were purchased in 1978 with the proceeds from a construction loan in the amount of $55,000.00. The home had been damaged by a fire and was not completed at the time of the trial. Capp Homes, the contractor hired by Dale to construct the house, is involved in litigation against Dale in regard to financial matters concerning the home. Dale also owned stock in Labco Corporation, but the value of the stock was not firmly established at the trial. The corporation's purpose consisted of buying lots in Burlington. Dale owns a one-half interest in the corporation.

Dale had insured the Wheatland, Wyoming, home against fire damage but the $17,359.00 insurance proceeds for the repair of the home were held by Capp Homes. At the time of trial Dale was in arrears on his support payments to Sylvia in the amount of $1,300.00. The district court directed that the Wheatland, Wyoming, home be sold and that the proceeds be evenly divided between the parties. Sylvia was invested with control over the home in Wheatland, Wyoming. The district court's distribution of the property acquired by the parties as well as the debts incurred by the parties is detailed in the amended judgment as follows:

1. Dale was ordered to pay $150.00 per month per child for the two minor children until they reach the age of majority—$300.00 per month.

2. Dale was ordered to pay all medical, dental, and optical expenses incurred by the two minor children—unpaid medical bills total $3,500.00.

3. Dale was ordered to pay his arrearages in support—at the time of trial it totaled $1,300.00.

4. Dale was ordered to pay the $3,983.40 balance due on the Teton camper; Sylvia was ordered to pay the balance due on the car which at the time of the trial totaled $1,911.69.

5. Dale was ordered to pay all debts incurred by the parties during the marriage, aside from those debts listed above.

6. The division of property reads as follows:

| Property to Sylvia | Property to Dale |
|---|---|
| Proceeds of Burlington home $22,780.00 | One-half of Labco stock—unknown |
| One-half of Dale's Labco stock or one-quarter interest—unknown | Vacation fund—$160.00 |
| | Teton camper—$8,000.00 |

| Property to Sylvia | | Property to Dale | |
|---|---|---|---|
| 1977 Oldsmobile automobile—[2] | $3,900.00 | Tools—$500.00 | |
| Antique closet—$150.00 | | Guns—$300.00 | |
| Stereo—$150.00 | | Riding lawnmower—$800.00 | |
| Microwave oven—$150.00 | | 2-wheel trailer—$100.00 | |
| Furniture and furnishings[3] from Burlington home—$870.00 | | Black and white TV—$25.00 | |
| | | Bed and dresser—$100.00 | |
| | | 4-drawer file—$14.00 | |
| TOTAL ................ | $28,000.00 | TOTAL ................ | $10,039.00 |

The value of the Wheatland, Wyoming, home was subject to dispute. Dale asserts that the home was not worth more than the $60,000.00[4] mortgage which existed on the home, while Sylvia asserts that the Wheatland home is worth $125,000.00. The district court ordered that Sylvia be invested with control over the property and that the property be sold and the proceeds divided equally between the parties.

## I.

■ This court has stated on numerous occasions that in divorce cases the property division need not be equal in order to be equitable. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979); *Bosma v. Bosma*, 287 N.W.2d 447 (N.D.1979); *Fries v. Fries*, 288 N.W.2d 77 (N.D.1980). Although the division of the property in this case is not equal, the property division is equitable in view of the previous analysis of the factors to be used to assure an equitable distribution of property. *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 197 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). Dale's conduct during the marriage was properly a factor which the district court could consider in determining the distribution of property. Dale has been a participant in extramarital relationships and these relationships have contributed greatly to the demise of the

marriage and the financial woes which Sylvia experienced. Conduct is a proper factor in determining the division of property in a case where the ground for granting the divorce is irreconcilable differences. *Nastrom v. Nastrom*, 262 N.W.2d 487 (N.D. 1978).

The circumstances and necessities of each party differ greatly because Dale's income-producing capacity far exceeds Sylvia's. Because Sylvia does not have an income-producing capacity comparable to Dale's and the children live with her, the distribution of the property is equitable; Sylvia's affidavit disclosing her financial statement reveals the escalating costs which she and the children will incur in the future. In addition, Sylvia is experiencing health problems which will affect her ability to pursue jobs which involve continued lifting and exertion. Dale's health problems can be treated by corrective surgery and will be paid for by Dale's insurance. The testimony at trial revealed that Dale's stock in Labco Corporation had minimal, if nonexistence, value.

■ In *Bosma v. Bosma*, 287 N.W.2d 447 (N.D.1979), we held that a trial court's determination in divorce proceedings on matters of alimony and division of property are treated as findings of fact. A finding of fact is clearly erroneous only when, al-

---

**2.** Dale asserts that the automobile should be valued at $5,500.00.

**3.** Dale asserts that the furniture and home furnishings should be valued at $1,800.00.

**4.** The original mortgage was for $55,000.00 and with accrued interest at the time of trial of approximately $5,000.00 totaled $60,000.00.

though there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. We hold that the district court's distribution of property is equitable and the amended judgment is affirmed because the trial court's findings of fact do not leave us with a firm conviction that a mistake has been made. Rule 52(a), N.D.R.Civ.P. Sylvia's motion for attorneys' fees on appeal is denied. (This sentence added by minute order 12–4–80.)

## II.

Dale next contends that the district court's award of alimony was clearly erroneous. The district court's award of alimony provides as follows:

"That effective June 1, 1982, the Defendant will pay to the Plaintiff as alimony ten percent (10%) of the Defendant's gross salary income each month for a period of one hundred eight (108) months with proof of income to be furnished each month by the Defendant; that if the Defendant is self-employed, the Plaintiff shall obtain information relative to the Defendant's net profits by proceeding with a modification petition; that said alimony is to terminate upon the death of either party or remarriage of Mrs. Carr; that said alimony shall not apply to unemployment benefits received by the Defendant."

■ We agree with the district court's provision for alimony in this case and we hold that the district court's award of alimony is not clearly erroneous. The trial court's determinations on matters of alimony are treated as findings of fact. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979). The findings of fact will not be set aside on appeal unless they are clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. We hold that an alimony award of a per-

centage of a spouse's income is not erroneous.

■ An award of alimony upon divorce is a method of rehabilitating the party disadvantaged by the divorce and is not a continuation of the right of one spouse to be supported by the other during marriage. *Bingert v. Bingert*, 247 N.W.2d 464 (N.D. 1976). In most cases, courts have awarded a specified sum as alimony, leaving it to the parties, in the event that future conditions render the award inappropriate, to seek modification of the award in a subsequent proceeding. The provision used by the district court in this case may serve to alleviate this problem. In addition, the provision provides needed flexibility because the amount of alimony paid will vary with the paying spouse's financial circumstances.

Most of the courts faced with determining the propriety of the "escalator" provision have reviewed the provision in the situation where the alimony award contained not only a fixed amount award of alimony but also a provision providing for payment of a percentage of the spouse's future salary increases as additional alimony. The court, in *Scheldrup v. Gaffney*, 243 Iowa 1297, 55 N.W.2d 272 (1952), upheld such a provision against the claim that the provision rendered judgments indefinite and uncertain of enforcement. Of similar import are *Elbinger v. Elbinger*, 33 Mich. App. 166, 189 N.W.2d 823 (1971); and *Foreman v. Foreman*, 234 Ga. 646, 217 S.E.2d 257 (1975). *See also Condy v. Condy*, 328 Ill.App. 8, 65 N.E.2d 219 (1946).

■ The arguments directed against allowing escalator provisions in alimony awards are unpersuasive. The award of alimony based upon such a provision does not destroy the paying spouse's incentive to comply with the judgment. The eventuality of noncompliance with the judgment is equally as great when a fixed amount of the paying spouse's income is awarded as alimony. The provision does not result in indefinite and uncertain judgments because the amount of alimony paid is determined on the basis of a percentage of the paying

spouse's income which in most cases is readily ascertainable.

For reasons stated in this opinion, the amended judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.