**Lewis JOCHIM, Plaintiff and Appellant,**

v.

**Arlis Sally JOCHIM, Defendant and Appellee.**

**Civ. No. 9793.**

Supreme Court of North Dakota.

May 28, 1981.

Phillip J. Brown, Bismarck, for plaintiff and appellant.

Tom Disselhorst, Bismarck, for defendant and appellee.

SAND, Justice.

The plaintiff, Lewis Jochim [Lewis], appealed from a district court judgment in a divorce action in which Lewis and the defendant Arlis Jochim [Arlis] were granted a divorce from each other because of irreconcilable differences. The district court judgment provided for a division of the couple's property and awarded Arlis $150.00 a month spousal support for three years.

Lewis and Arlis were married at Bismarck, North Dakota, on 1 January 1950. At the time the divorce action was initiated all the children of the marriage were over the age of 21 and were not living with their parents.

At the time of the trial Lewis was 53 years old. He wears a brace on his right leg as a result of wounds incurred in World War II, and is paralyzed on his left side as the result of a stroke suffered on 3 October 1977.[1] Lewis testified that he has a one hundred percent disability rating and receives $954.00 a month as a veteran's disability pension since his injuries in World War II. Arlis testified that she has a heart condition.

After trial, the district court entered judgment which provided for the following disposition of the couple's real and personal property:

---

1. During oral argument we were informed that since the entry of judgment, Lewis was admitted to St. Alexius Hospital in Bismarck, North Dakota, for blood clots in his right leg and has undergone three major operations. The last operation resulted in the amputation of his right leg.

```
TO LEWIS:
Cabin  - Lake Isabel . . . . . . . . . . $ 10,000.00
Three mobile homes  . . . . . . . . . .    13,500.00
1979 Monte Carlo automobile . . . . . .     3,500.00
Boat and motor  . . . . . . . . . . . .     2,500.00
1972 motorcycle . . . . . . . . . . . .       250.00
Snowmobile  . . . . . . . . . . . . . .       225.00
Lewis' guns and fishing tackle . . . . .     1,000.00
                                         $ 30,975.00
TO ARLIS:
Equity in family home with mortgage in
     neighborhood of $21,000.00  . . . . $ 21,000.00
1972 Volkswagen . . . . . . . . . . . .       500.00
One-acre lot north of Bismarck . . . . .      500.00
All household goods and furnishings
     presently in Arlis' possession
     except Lewis' guns and fishing
     tackle  . . . . . . . . . . . . .       1,500.00
                                         $ 23,500.00
```

The district court ordered the sale of the remaining motorcycles, a gooseneck trailer, a 1958 pickup camper, and a 1955 GMC pickup with the proceeds to be divided equally between Arlis and Lewis. The district court also ordered the $8,000.00 balance due to the Jochims on a farm contract[2] plus $2,700.00 already received on the contract payment to be divided equally between Lewis and Arlis.

Additionally, the district court ordered Lewis to pay Arlis $150.00 a month for three years for "spousal support" to allow Arlis "to move into the job market."

Lewis appealed from that judgment and raises two issues for our consideration.

The first issue deals with the court's division of property. Lewis asserts the trial court erred in valuing the couple's three mobile homes at $13,500.00, and that a more realistic value of the mobile homes was $7,000.00. Lewis received the mobile homes in the trial court's property disposition. The mobile homes were income-producing property. Lewis contends that if the value of the three mobile homes were reduced to $7,000.00, the property division would be approximately equal, but because of his physical condition the division would still be inequitable.

2. The Jochims had farm land which they sold on contract for deed and on which they were receiving payments of $2,000.00 a year and on which $8,000.00 remained due.

3. The transcript reflects that Lohstreter testified that one of the three mobile homes, the 1968 home, was worth $35,000–40,000. Lewis attributes this proportionately large value to either a misspoken statement by Lohstreter or to an error in the preparation of the transcript, and that the actual testimony was $3,500–4,-

Lewis testified at trial that the three mobile homes have an approximate value of $15,000.00, with $1,472.20 in debt due on the mobile homes. Bruce Lohstreter, assistant vice president and manager of the installment loan department at the State Bank of Burleigh County, had dealt with the Jochims on a loan for the three mobile homes and testified that the value of three of the mobile homes was between $6,500.00 and $7,500.00.[3] Lohstreter testified that his appraisals were values that the bank could place on the mobile homes "without actually going out and physically doing an appraisal."

Section 14–05–24, North Dakota Century Code, requires that the trial court make an equitable distribution of the real and personal property of the parties when a divorce is granted. There are no fixed and rigid rules by which the trial court is to divide the marital estate in a divorce case. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D.1980). For instance, there is no requirement that a property division in a divorce case be equal in order to be equitable. *Rudel v. Rudel*, 279 N.W.2d 651 (N.D.1979). The ultimate objective is to make an equitable distribution, and a determination of what is an equitable division lies within the discretion of the trial court and depends on the facts and circumstances of each case. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979).

It is well established that the following factors (*Ruff-Fischer*[4] guidelines) may be considered by the trial court in making an equitable distribution of property:

" . . . the respective ages of the parties to the marriage; their earning abilities; the duration of and conduct of each during the marriage; their station in life;

000. For purposes of this appeal, we will accept as true the figures proposed by Lewis. Lohstreter also testified that the 1962 mobile home had a value of $2,000.00, and the 1958 mobile home had a value of $1,000.00 to $1,500.00.

4. *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952).

the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value at that time; its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952)." *Bosma v. Bosma*, 287 N.W.2d 447, 450 (N.D.1979).

■■ The trial court's determinations on matters of division of property and alimony are treated as findings of fact and will not be reversed by this Court unless clearly erroneous. *Williams v. Williams*, 302 N.W.2d 754 (N.D.1981). A particular finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on all the other evidence is left with a definite and firm conviction that a mistake has been made. *Nastrom v. Nastrom, supra.* Simply because we might have viewed the evidence differently, had it been presented to us as the trier of fact, does not entitle us to reverse the trial court. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979).

■ When there is conflicting testimony, the reviewing court will give considerable weight to the findings of the trial court because the trial court is able to see and hear the witnesses, and the reviewing court is not. *Nastrom v. Nastrom, supra.* The judge at the trial court level is in a better position to accept one version of the facts over another because he is able to listen to and observe the demeanor of the witnesses, whereas this Court, bound by a cold reading of the transcript, cannot do so.

■ In this instance the value of the three mobile homes found by the trial court is within the range of values testified to at trial by the witnesses. Because the trial court's finding is within the range of value

testified to at trial by the witnesses and because the trial judge observed the witnesses testify, we cannot say that the trial court's findings are clearly erroneous. This is especially true when we consider that Lohstreter's appraisals were "without actually going out and physically doing an appraisal." Furthermore, even if the mobile homes were valued at $7,000.00, the property division would be roughly equal, and in this instance, because Lewis received the income-producing mobile homes, we could not say the property division was inequitable. We conclude that the trial court's finding on the value of the mobile homes and its property division is not clearly erroneous pursuant to Rule 52(a), North Dakota Rules of Civil Procedure.

The last issue raised by Lewis relates to the trial court's award of $150.00 a month "spousal support" to Arlis for a period of three years. Lewis points out that the *Ruff-Fischer* guidelines apply to determinations of alimony and asserts that the trial court's findings of fact in this area are deficient. Lewis also asserts that the memorandum decision, which may be considered to determine facts found by the trial court, *Hegge v. Hegge*, 236 N.W.2d 910 (N.D. 1975), provides little more information to determine the factual basis of the trial court's award of alimony.

■ The function of alimony [5] is to rehabilitate the party disadvantaged by the divorce. *Williams v. Williams, supra.* The trial court's determinations on matters of alimony are treated as finding of fact and will not be set aside unless clearly erroneous. *Williams v. Williams, supra.*

■ In *Bosma v. Bosma*, 287 N.W.2d 447, 450–451 (N.D.1979), we said that:

"Although we have never specifically said that the trial court must make an express finding as to each of the factors enumerated, we encourage trial courts to carefully consider the *Ruff-Fischer* guide-

---

5. The term "alimony" appears in the headnote of §§ 14–05–23 and 14–05–24, but not in the main body. Section 1–02–12, NDCC, provides that the headnotes are not part of the statute. "Support" is the term used in the statute and whenever the term "alimony" is used it usually and really means "spousal support." The term "spousal support" is more descriptive than the term "alimony" and should be given preference. The trial court used the term "spousal support."

lines in equitably distributing the marital estate, and in determining awards of alimony and child support."

In this instance the trial court allowed Arlis $150.00 a month spousal support for three years "to move into the job market." Although the findings and considerations by the trial court are not as detailed on the issue of alimony as we would like, we believe this excerpt reflects that the trial court considered the relative earning capacities of the parties and in particular of Arlis. Furthermore, based on the record before us, we are not left with a definite and firm conviction that a mistake has been made in awarding Arlis $150.00 a month spousal support, and we conclude that the trial court's award of alimony was not clearly erroneous.

Costs on this appeal will be assessed against Lewis.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.