**Cheryl C. RUST, Plaintiff and Appellant,**

v.

**Curtis V. RUST, Defendant and Appellee.**

**Civ. No. 10152.**

Supreme Court of North Dakota.

July 1, 1982.

James R. Brothers, of Schuster & Brothers, Fargo, for plaintiff and appellant.

Paul M. Hubbard, of Conmy, Feste & Bossart, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Cheryl Rust sought a decree of separation from bed and board. Curtis Rust counterclaimed for a divorce. The case was tried in the district court of Cass County, which entered a judgment of divorce for Curtis on the ground of irreconcilable differences. Cheryl appealed from the judgment. We affirm.

The parties were married on December 5, 1954. From 1954 to 1974 Curtis served in the United States Navy, which required numerous moves by the parties to duty stations throughout the world. After 20 years of service Curtis retired and was eligible for a military-retirement pension. They returned to North Dakota in 1975 and in 1976 they moved into their present marital home. The parties separated in 1977; Cheryl continued to live in the marital home.

The judgment and decree of divorce was entered on December 11, 1981. The judgment divided the parties' property and ordered the marital home sold with the proceeds to be applied to delinquent and current real-estate taxes, a first and second mortgage, and costs of the sale, the balance to be applied to other debts and thereafter to pay reasonable attorney fees and court costs for both parties.

The judgment also awarded to Cheryl spousal support payments on a decreasing basis over a period of 10 years.[1]

Cheryl raises on appeal the following issues:

1. Whether or not the trial court erred in failing to consider the conduct of the defendant during the course of the marriage in determining a division of the parties' property.

2. Whether or not the trial court erred in its application of the case of *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), to North Dakota law.

---

1. The judgment provides that Cheryl is to receive $300 per month for four years commencing December 1, 1981. The payments would then be reduced to $250 per month for four years and further reduced to $200 per month for the next two years.

3. Whether or not the trial court erred in the amount of spousal support (rehabilitative alimony) awarded to the plaintiff because the military-pension income of the defendant was not taken into consideration in setting the amount of support to be awarded; and whether or not the trial court further erred in its finding that rehabilitative alimony cannot be permanent in nature or else it would constitute a division of property.

4. Whether or not the trial court's finding that the home must be sold is clearly erroneous.

5. Whether or not the trial court erred in failing to award to the plaintiff her attorney fees and costs.

## I.  CONDUCT OF THE DEFENDANT

Cheryl contends that the trial court failed to consider Curtis's conduct during the marriage when it made its division of property. Her position is that the *Ruff-Fischer*[2] guidelines direct the trial court to consider, among other things, the conduct of each party during the course of the marriage when it makes a property division. She then focuses on the trial court's finding of fact which recognizes that during the marriage Curtis sexually molested[3] two of his children, that he was an alcoholic, that he contracted venereal disease from a bar girl in Japan, that he had kicked Cheryl out of bed, and that he expressed to her his desire that she were dead.

We note, however, the trial court's finding of fact No. 9 which discusses Curtis's contention that all of the fault is not on his side and his testimony that he did not beat or threaten Cheryl, that Cheryl was a hypochondriac who used too many prescription drugs and pills, and that Cheryl also drank to excess and became argumentative. We believe it is obvious that the trial court took into account the conduct of both parties when it made its property division. Under the *Ruff-Fischer* guidelines, the con-

duct of the parties is only one factor among a number of others to be considered by the trial court when dividing property. Conduct is not necessarily the sole or controlling factor and the guidelines do not require the division of property to be based on conduct of the parties; rather, they require that the trial court consider conduct in making the property distribution.

The trial court explained in finding of fact No. 20 its reason for an equal distribution of property, as opposed to an uneven distribution in favor of Cheryl, as follows:

"20.  This Court finds fault on both sides to some degree. It is impossible for this Court to determine the percentage of fault attributable to one or the other or which party's conduct precipitated the fault of the other. The fault of the Defendant in molesting the children is too old to be seriously considered in that it happened many years ago and the children affected have good relationships with their father. The episode of sexual relations and contacting [*sic*] venereal disease from a bar maid in Japan is likewise too far in the past for this Court to consider it as a reason for uneven distribution of marital property. Testimony indicated that Plaintiff knew of this and her subsequent actions constituted a condonation of his conduct. Defendant's excessive use of alcoholic beverages during the marriage can be considered as a disease. This Court in its discretion believes that in the interest of justice it should not be under the facts in this case used as a factor to cause unequal distribution of the marital assets. Similarly the conduct of Defendant in kicking the Plaintiff or expressing desires that she were dead are attributable to his drinking . . . ."

The record indicates that the trial court considered the testimony and evidence about the drinking by both parties, Cheryl's allegations of mistreatment, Curtis's allegations of Cheryl's paranoia and hypochondriasis, and all other complaints by the par-

---

2. *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

3. These incidents did not constitute sexual intercourse.

ties and then, being unable to determine who was at fault, concluded that the fairest thing to do would be to divide the property equally and award Cheryl rehabilitative alimony.

We have stated:

"There is no clear rule by which division of property is to be made in a divorce case, and the determination of what is an equitable division lies within the discretion of the trial court." [Citations omitted.] *Kostelecky v. Kostelecky*, 251 N.W.2d 400, 402 (N.D.1977).

■ We will not set aside a division of property by the trial court unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. Our review of the record does not convince us that a mistake has been made. The distribution of property by the trial court was not clearly erroneous.

## II. THE APPLICATION OF *McCARTY* TO NORTH DAKOTA

■ In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that a military pension was not community property subject to distribution by a State divorce court. It is Cheryl's position that a military pension under *McCarty* is not divisible as a property right in divorce actions, but that it can be considered by the trial court when determining an award of spousal support. We agree.

In *Webber v. Webber*, 308 N.W.2d 548 (N.D.1981), we briefly discussed the *McCarty* case. In *Webber* the trial court concluded that the plaintiff's military-retirement benefits were property rights constituting marital assets and as such were subject to distribution upon dissolution of the marriage. On appeal we remanded the case for the trial court to reconsider its position in the light of the then recent *McCarty* decision.[4] We stated:

"Though the *McCarty* case arose in California, a community property state, it is clear that the law of property division in

states like North Dakota are affected as well." 308 N.W.2d at 549.

*Webber* makes it clear that a military-retirement pension is not a divisible asset for purposes of a property division. We did not, however, explain in *Webber* the effect of *McCarty* on a claim for spousal support because that issue was not before the court. The instant case differs from *Webber* in that it involves the trial court's award of spousal support, and *McCarty* recognizes garnishment of military wages and pensions for such support. 42 U.S.C. §§ 659, 662.

We agree with the Florida Court of Appeals, which recently stated:

"In the well publicized *McCarty* case the U. S. Supreme Court held that a military pension was not community property subject to distribution by a state divorce court. The court did not hold that a pension was an asset which could not be drawn on to provide support for the ex-spouse and children. Indeed, as noted in *McCarty*, Congress has provided for the garnishment of military wages and pensions for just such support, 42 U.S.C. §§ 659, 662. It is clear that the needs of national defense, as seen by Congress, do not require state courts to avoid all use of military pensions in support cases. The *McCarty* ruling does not prohibit a state divorce court from considering military pensions in support proceedings." *Higgins v. Higgins*, Fla.App., 408 So.2d 731, 732 (1981).

See also *In re Marriage of Jones*, 309 N.W.2d 457, 460–461 (Iowa 1981).

We noted in *Webber, supra*, 308 N.W.2d at 549–550, that an award of alimony, in some cases, may also be, in part, a type of property division. The instant case, however, does not involve commingling of a property distribution with alimony or support because the trial court clearly indicated in its finding of fact No. 19 that its award of rehabilitative alimony "is a pure spousal 'support' element and not a division of property."

4. The United States Supreme Court decided the *McCarty* case subsequent to the ruling by the trial court in *Webber v. Webber*, 308 N.W.2d 548 (N.D.1981).

In those cases where a military pension is involved and there is confusion as to whether or not an award of alimony includes a distribution of property, this court will have to determine on a case-by-case basis whether or not the restriction in *McCarty* has been observed.

## III. REHABILITATIVE ALIMONY

Having expressed our agreement with Cheryl's position as to the application of *McCarty* to claims for support in North Dakota, we next examine Cheryl's contention that the trial court erred by not taking into consideration Curtis's military pension in determining the amount of rehabilitative alimony to be awarded. Her argument, however, is not borne out by the record.

The trial court did not divide the pension as an asset or property nor did it make an offsetting award of property. The trial court did, however, consider the pension in determining its award of rehabilitative alimony. In finding of fact No. 19 the trial court stated:

"The fact that the military retirement pay cannot be attached does not mean that it must be completely ignored. The *Ruff-Fischer* guidelines can still be applied so as to still effectuate the preempted federal interest. The circumstances and necessities of the parties is one of these elements that gives this Court great concern. The Plaintiff is now in a situation of having to work outside the home to support herself as much as possible. It certainly would not be contrary to the *McCarty* opinion to give her alimony, so long as the amount does not intrude into the area of it being a splitting of property. It is considered by this Court to be rehabilitative alimony based entirely on the needs of a spouse and her being placed in such a situation because of a divorce. Necessarily, the rehabilitative alimony cannot be permanent or else it would be a division of property from the military retirement pay. It is a pure spousal 'support' element and not a division of property. The dividing line between the two is not clear cut and exact,

but rests in the best discretion of this Court."

Finding of fact No. 19 indicates that the trial court was concerned only about contravening *McCarty* by an award of permanent alimony. It expressed no concern about the amount of its award as being restricted by *McCarty*. The trial court was careful to explain that its award of rehabilitative alimony was based on need and that it ". . . is a pure spousal 'support' element" so that the award would not be construed as a division of property.

The trial court was obviously aware that this court has recognized cases in which alimony-type payments have been used in lieu of a distribution of property. See *Webber, supra*, 308 N.W.2d at 549; *Eberhart v. Eberhart*, 301 N.W.2d 137, 143 (N.D.1981); *Sabot v. Sabot*, 187 N.W.2d 59, 63 (N.D. 1971). Notwithstanding our recognition of these types of periodic payments it must be stressed that they constitute a division of property and are not "alimony" in the technical sense of the term. "[W]henever the term 'alimony' is used it usually and really means 'spousal support'" [*Jochim v. Jochim*, 306 N.W.2d 196, 199, fn. 5 (N.D.1981)] as opposed to a division or distribution of property.

To avoid confusion as to the nature of an award of "alimony" we further stated in *Jochim, supra*, 306 N.W.2d at 199, fn. 5, "The term 'spousal support' is more descriptive than the term 'alimony' and should be given preference." We note that the trial judge used the term "spousal support" in the judgment.

Cheryl, however, focuses on the trial court's statement that "[n]ecessarily, the rehabilitative alimony cannot be permanent or else it would be a division of property from the military retirement pay." She suggests that this statement means that the trial court would have awarded permanent rehabilitative alimony but for the restriction of *McCarty*.

We, however, are of the opinion that, notwithstanding *McCarty*, the trial judge would not have awarded permanent rehabilitative alimony. The trial judge did not

state, or otherwise indicate, that he would have awarded permanent rehabilitative alimony but that he was precluded from doing so. He specifically stated that the award of rehabilitative alimony was based entirely on Cheryl's needs.

We note that Cheryl's rehabilitative alimony was awarded on a decreasing basis. We interpret this as an indication that the trial judge did not believe that Cheryl was in need of permanent support.

Cheryl further argues that the trial court erred in its determination that rehabilitative alimony cannot be permanent in nature or else it would constitute a division of property. Although we can envision situations where permanent rehabilitative alimony could be appropriately awarded—for example, where a permanently handicapped spouse is in need of continuous rehabilitation—the issue is not before us. The trial judge's statement, in the context in which it was written, is, essentially, dicta because he did not consider it necessary to award permanent support. The statement was made only to reinforce the trial court's position that it was not awarding permanent support lest the award be construed as involving a division of property.

█ For the above reasons we believe that the trial court properly applied *McCarty* to the instant case and considered Curtis's military pension when it made its award of spousal support to Cheryl based on need. Cheryl's dissatisfaction with the amount of her support award cannot be traced to a misinterpretation of law or fact by the trial court notwithstanding its statement that permanent rehabilitative alimony constitutes a division of property.

## IV. THE MARITAL HOME

█ Cheryl argues that the trial court erred in not awarding the marital home to her based on a finding by the trial court that she was unable to meet the monthly mortgage payments plus the taxes. To support her position she insists she and Curtis had always lived to have a dream home after retirement and that one of the incentives for her to consent to Curtis's staying in the military was that he had promised her such a home.

We find this argument unpersuasive and we agree with the trial court's finding of fact No. 21 wherein it is stated:

"A divorce decree cannot be based on promises made by one spouse to another even though such promise was given in good faith. The home is considered by this Court to be too large for the use of the Plaintiff alone. She is unable to meet the monthly mortgage payments plus the taxes. This problem is further exacerbated when the delinquency on the mortgage payments is considered. This Court facing this problem can find no fair and just remedy other than having the home sold and the proceeds used first to pay mortgages and debts. This may appear to the Plaintiff to be a cruel solution, but the dissolution of a marriage with the resulting division of property can never be made painless."

The house has 4,500 square feet of usable floor space including the basement and it stands on 16.33 acres of land. It is encumbered by two mortgages, both of which are six months delinquent. This is a very large house and it is not feasible for Cheryl to keep it nor would it be feasible or fair to require Curtis to support Cheryl in it.

## V. ATTORNEY FEES AND COSTS

█ The trial court's decision to award reasonable attorney fees and costs is a matter within the trial court's sound discretion. Sec. 14–05–23, N.D.C.C.; *Webber v. Webber, supra,* 308 N.W.2d at 550. We will not tamper with the court's award unless there has been an abuse of discretion. *Webber, supra,* 308 N.W.2d at 550. In the instant case, the trial court ordered the attorney fees of both parties to be equal in amount and the amount to be determined mutually by the parties. It further ordered the attorney fees and court costs for both parties to be paid out of the proceeds from the sale of the house. We find this arrangement to involve no abuse of discretion.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.