**Conchita A. DELOREY, Plaintiff and Appellant,**

v.

**David R. DELOREY, Defendant and Appellee.**

Civ. No. 10664.

Supreme Court of North Dakota.

Nov. 28, 1984.

---

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff and appellant; argued by Donald L. Peterson, Minot.

Ella Van Berkom, Minot, for defendant and appellee; argued by Ella Van Berkom, Minot.

PEDERSON, Justice.

This is an appeal from a judgment granting the parties a divorce from each other. Conchita Delorey (Conchita) argues that the trial court erred in awarding her support of $300.00 per month for twelve months and seeks an award of $400.00 per month permanent alimony. David Delorey (David) has moved to dismiss the appeal on the grounds that Conchita has accepted substantial benefits under the judgment. We do not find from the record that Conchita has accepted substantial benefits and deny the motion to dismiss. We reverse the trial court's award of spousal support and remand for reconsideration in accordance with this opinion.

Conchita, who is in her late thirties, is a citizen of the Republic of the Philippines and has no relatives in the United States. She married David, who is in his early forties, in 1971 at Clark Air Force Base in the Philippines, where he was stationed. The parties remained in the Philippines until 1973, when David was transferred to Virginia. They returned to the Philippines from 1975–1977. David transferred back to the United States after that time, but Conchita did not join him in Minot until 1979.

During the time the parties resided in the Philippines, Conchita did not work outside the home because of an agreement between the United States Air Force and the Republic of the Philippines. In the United States, Conchita obtained periodic employment as an unskilled laborer, working as a housekeeper, cook and kitchen helper. She has had no formal education and no formal job training and is not fluent in the English language.

David has a high school diploma, some college credits and an Air Force job that has provided him with skills that are transferable to civilian employment. He has received two promotions and regular pay raises since the marriage. David has accumulated some funds in an Individual Retirement Account and is eligible for military retirement. In addition to his salary, he receives dental and medical care through his military service and several non-taxable "allowances" for living off the military base.

Each of the parties brought little property into the marriage and they were unable to accumulate much property during the course of the marriage. The marriage was something less than idyllic and the parties had separated several times before the final separation in March 1983. There are no children from the marriage.

Conchita apparently has a gambling problem and became involved in the black market in the Philippines, presumably to

help support her gambling habit. Although David disapproved of Conchita's gambling, he gave her money when she asked for it and did nothing to encourage her to seek professional help for her problem. At the time of the trial, Conchita was sharing an apartment with a male Air Force employee and was unemployed.

The trial court, in its findings of fact, determined that Conchita had not given up any opportunities for the marriage and thus was not disadvantaged by the dissolution. The court noted that Conchita "needs some assistance until she can either find a decent job or remarry. Such support *cannot be justified in terms of alimony. It could be justified in the form of partial property distribution.*" (Finding of Fact VIII; emphasis added.) In its Conclusion of Law V, however, the court ordered David to pay Conchita "as support money", $300.00 per month for a period of twelve months. The court also found that no retirement had vested in David because he was still on active duty and concluded, as a matter of law, that an unvested military pension could not be considered in property distribution.

 It is perhaps unfortunate that the terms alimony and spousal support continue to be used interchangeably. Alimony in the traditional sense is viewed as a continuation of the right of one spouse to be supported by the other during marriage. This court has explicitly rejected that approach. *See Carr v. Carr*, 300 N.W.2d 40, 46 (N.D.1980). The purpose underlying alimony or spousal support today is rehabilitative, to allow the disadvantaged party time and resources to acquire new skills. It can be for a limited period of time or it can be permanent to provide the traditional maintenance for a party incapable of rehabilitation. *See, e.g., Smith v. Smith*, 326

N.W.2d 697, 700 (N.D.1982); *Briese v. Briese*, 325 N.W.2d 245, 248–49 (N.D.1982); *Gooselaw v. Gooselaw*, 320 N.W.2d 490, 493 (N.D.1982). How "alimony" payments are treated depends on the nature of the payments, i.e., whether they are actually a form of property division or spousal support. Spousal support is subject to modification upon proof of changed circumstances, while property division is a final determination. *See generally, Seablom v. Seablom*, 348 N.W.2d 920, 923–25 (N.D.1984). In this case, the trial court specifically stated that the payments were a form of property distribution and we will regard them as such on this appeal.[1]

 Section 14–05–24, NDCC requires the court to distribute the parties' real and personal property "as may seem just and proper." The court's distribution will not be disturbed unless it is clearly erroneous, either because it lacks substantial evidentiary support or because it was induced by an erroneous view of the law. *Jondahl v. Jondahl*, 344 N.W.2d 63, 70 (N.D.1984); *Winter v. Winter*, 338 N.W.2d 819, 822 (N.D.1983). The court's distribution in this case was induced by an erroneous view of the law, that an unvested military pension cannot be considered in the distribution of the marital estate.

The availability of a military retirement pension as a divisible asset for purposes of a property division has undergone several changes within the past few years. The United States Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) held that federal law precluded a state court from dividing military nondisability retirement pay pursuant to state community property laws. Congress reacted to the Supreme Court decision by enacting the Uniformed Services Former Spouses' Protection Act, Pub.L.

---

1. If we were to consider the payments in this case as spousal support instead of property division, our review would be disposed of by Rule 52(a), NDRCivP. We would have set aside the trial court's determination only if we were left with the firm conviction that a mistake had been made. *See Mees v. Mees*, 325 N.W.2d 207, 208–09 (N.D.1982).

Our disposition of this appeal makes it unnecessary for us to address the specific issue of whether or not the trial court's award of "spousal support" was clearly erroneous, but we note that under the facts presented on this record it would be difficult to conclude that the award adequately served a rehabilitative function.

No. 97–252, 96 Stat. 730 (1982), codified at 10 U.S.C. § 1408 (1982). We recently had occasion to consider the Act's effect in *Bullock v. Bullock*, 354 N.W.2d 904, 906–08 (N.D.1984), and noted that many states have ruled that the Act's effect is to allow each state to make the final decision concerning the divisibility of military nondisability retirement pay.

This court, in *Webber v. Webber*, 308 N.W.2d 548 (N.D.1981), remanded a trial court's decision that military retirement benefits were property rights constituting marital assets subject to distribution. The remand was based on the Supreme Court's *McCarty* decision. In *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982), we determined that military retirement pay is not a divisible asset for property division purposes. *Rust*, however, was based solely on the *McCarty* decision, which has effectively been overruled by Congress. As we stated in *Bullock, supra*, at 908, *Rust* can no longer be considered as controlling North Dakota law with respect to the divisibility of military retirement pay.

Although the trial court did not have the benefit of our opinion in *Bullock*, the record makes it clear that the court and counsel were aware that a federal statute might have altered the *McCarty* and *Webber* decisions and that consideration of the retirement pay would require a change in the property distribution. Nowhere in the record does it appear that the actual provisions of the federal statute were considered and applied to the facts of this case. Instead, the court concluded that because it did not have the present value of the retirement account and the pension might never vest, it was not able to consider the military retirement pay as a divisible asset.

This court has previously held that profit-sharing funds could be considered in the division of property. *See, e.g., Keig v. Keig*, 270 N.W.2d 558 (N.D.1978). We recently held that where present values of annuities cannot be agreed upon, it may be necessary to divide them according to a formula that requires both parties to share in the ultimate risks and benefits involved. *Glass v. Glass*, 344 N.W.2d 677, 678–79 (N.D.1984). We commented in *Glass* that although Minnesota has a statute that implies that only vested pension rights are marital property, the Minnesota Supreme Court has concluded that non-vested pensions are also marital property. The Minnesota Supreme Court offered appropriate guidelines for trial courts that have to divide retirement benefits. We summarized these in *Lentz v. Lentz*, 353 N.W.2d 742, 747 (N.D.1984). Finally, in *Bullock, supra*, at 910–11, we concluded that a non-vested military pension was properly considered an asset for purposes of property distribution and that the district court's formula properly allocated the risks and benefits involved between the parties.

■ The trial court's failure to consider the military retirement plan was induced by an erroneous view of the law and, consequently, the whole question of equitable property division in this case must be retried. The judgment is reversed to the extent that it involves property division and "spousal support" and the case is remanded for retrial of those issues.

ERICKSTAD, C.J., and SAND, J., concur.

VANDE WALLE, Justice, concurring specially.

I reluctantly concur in the result reached in the majority opinion. Were it not for the specific statutory admonition in Section 14–05–24, N.D.C.C., that the court distribute the real and personal property of the parties as may seem just and proper, I might well dissent. If the parties have presented no evidence of the value of the military pension to the trial court, the trial judge is not in a position to place a value on the pension. The case law of the various jurisdictions is littered with decisions discussing the various methods by which pensions or

retirement benefits may be valued for purposes of distribution in divorce proceedings. As Justice Pederson has noted in the majority opinion, we have a few of our own in North Dakota. I believe it is safe to assume that in most of those cases evidence concerning the value of the pension or retirement benefit was at least offered to the court. Here, no evidence concerning the value of the pension was submitted to the court. If the trial judge had attempted to assign a value to the pension and divide it between the parties I have no doubt we would have reversed because there was no evidence in the record upon which the trial judge could have made such a determination.

In a negligence action tried to the court we have no trouble affirming a dismissal where the plaintiff fails to introduce evidence to prove his claim. Here, despite the fact there is no evidence in the record concerning the value of the pension and despite the fact Conchita did not raise as an issue on appeal the failure of the trial judge to value and divide the pension, I reluctantly concur in the result reached by the majority opinion. I do so partly because of the trial judge's erroneous indication that an unvested military pension could not be considered in property distribution and partly because Section 14–05–24, N.D.C.C., appears to place an affirmative duty on the trial courts to distribute the property of the parties equitably.

GIERKE, J., concurs.