**Julio N. MORALES, Plaintiff and Appellee,**

v.

**Josephine O. MORALES, Defendant and Appellant.**

**Civ. No. 11285.**

Supreme Court of North Dakota.

March 2, 1987.

Marie M. Feidler, of Feidler & Feidler, Grand Forks, for plaintiff and appellee.

Arline F. Schubert, of Spaeth & Schubert, Grand Forks, for defendant and appellant.

VANDE WALLE, Justice.

Josephine Morales appealed from the amended judgment of the district court of Grand Forks County which awarded her 35 percent of one-half of Julio Morales's military retirement pay on a prospective basis. We affirm.

Josephine and Julio were divorced in 1981. At that time, Julio was retired from the military after having served approximately 20 years and 10 months. Julio and Josephine had been married approximately 17 years and 3 months of the time Julio was in the military. At the time of the divorce, the controlling law in North Dakota, pursuant to *McCarty v. McCarty,* 453

U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), and *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982), was that military retirement pay was the sole property of the military spouse and could not be the subject of a property division at divorce. However, Congress passed the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C.A. § 1408, in 1982, which allowed former spouses of service members to return to court to seek a modification based on State law prior to *McCarty*. In other words, the State courts no longer were bound by the holding in *McCarty* that Federal law preempted State law. Thus military retirement pay could now be considered by State courts according to the State's law, and if proper a division of military retirement pay from the time of the divorce could be ordered.

Because *McCarty* was controlling when the parties were divorced, Julio's retirement pay was not treated as marital property subject to division. As a result of the enactment of USFSPA, Josephine petitioned the trial court to amend the divorce judgment and award her a share of Julio's military retirement pay. Josephine asked the trial court to make the division based upon the formula in *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984). Josephine also asked that the award be retroactive to the time of divorce.

The trial court awarded Josephine 35 percent of one-half of Julio's retirement pay. The trial court made the award prospective only, because of Julio's payments of approximately $15,000 to the parties' daughter, Caron, who was living with Josephine. Josephine claims the trial court erred in misapplying the *Bullock* formula.

In regard to the property of the parties, the trial court's division will not be reversed unless it is clearly erroneous. *Chinn v. Chinn*, 394 N.W.2d 692 (N.D. 1986); *Delorey v. Delorey*, 357 N.W.2d 488 (N.D.1984). Additionally, the trial court is not bound by any rigid formula and there is no rule that each spouse must receive a certain percent of the marital assets. *Clark v. Clark*, 331 N.W.2d 277 (N.D. 1983); *Jochim v. Jochim*, 306 N.W.2d 196 (N.D.1981).

Josephine claims that the trial court stated it was using the *Bullock* formula, and then misapplied the formula. Although the trial court did mention the *Bullock* formula, perhaps because Josephine had asked that it be applied, it never stated that it was applying the formula.[1] In *Bullock*, we did not say that the property division in that case was the only proper one. Rather, we held in *Bullock* that in view of the circumstances in that particular case the formula used was not clearly erroneous.

The trial court found that Josephine sacrificed her advancement by working so that Julio could get his education. But the trial court further found that Josephine had received a more favorable property division than had Julio and that there had been no showing of extensive assistance by Josephine to Julio to aid in his career advancement. In sum, the trial court found that the factors considered showed a balancing of detriment suffered and benefits gained by Josephine during the marriage.

We therefore affirm the trial court's decision in this regard.[2]

1. Our opinion is based upon the assumption that the trial court did not intend to strictly apply the formula set forth in *Bullock*. However, if, as Josephine suggests, the trial court intended to apply the *Bullock* formula of

$$\frac{\text{years of marriage}}{\text{years in military}} \times \frac{\text{½ of military spouse's}}{\text{retirement benefits}}$$

the trial court may have mistakenly applied the formula. It is not clear from the record that the trial court intended to rigidly apply the *Bullock* formula, and thus we do not know whether the 35 percent of one-half of Julio's retirement ben-

efits was the amount the trial court intended. The proper method for Josephine to proceed would be to apply for relief from the amended judgment pursuant to Rule 60(a), N.D.R.Civ.P. If the trial court merely miscalculated the amount it intended Josephine to receive, it can thereby correct the amount.

2. We have not considered in this opinion the contention in Julio's brief that Josephine is not entitled to any portion of the military retirement pay whatsoever. He argues that his military retirement pay "is not subject to division as

Josephine also questions the trial court's ruling that the award be prospective. The trial court based this ruling on the fact that Julio had been sending regular payments to the parties' daughter, Caron, who was living with Josephine. The trial court found it difficult to believe that Josephine did not know of the payments, which totaled approximately $15,000. The trial court found this would be an indirect benefit to Josephine, and thus made the award of Julio's military retirement benefits prospective only. We cannot say that these findings are clearly erroneous.

The dissent concludes, under the guise of the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P., that the trial court was in error in its award. A perusal of the brief and the issues therein submitted by Josephine and a perusal of the dissent might lead the reader to observe that two different cases were being discussed. This case was argued to this court on the basis that the *Bullock* formula applied as a matter of law. As stated in Josephine's brief:

"It is the argument of Josephine that, in this case, the circumstances and factors used by Judge Medd treated the award of retirement pay to the Appellant as spousal support or alimony. We argue that it should be considered as and treated as marital property to be divided equally *according to the established Court* formula." [Emphasis supplied.]

Although the dissent might make a good appellant's brief it does not discuss the argument advanced to this court. Rather, it is reminiscent of the de novo standard of review practiced by this court in appeals from actions tried to the court without a jury prior to 1971.[3] Under that standard of

review it was for the Supreme Court to construe the pleadings and determine the issues involved in each case that came before it. See, e.g., *Nord v. Nord*, 68 N.D. 560, 282 N.W. 507 (1938). But it no longer is the function of this court to scour the record for issues which could lead to a result we might believe to be more desirable, and we must resist the urge to retry the case for the parties.

Finally, if we are to raise this issue on our own initiative, the trial court's findings concerning Josephine's assistance to her husband were:

"There has been no showing of extensive assistance by Josephine to Julio to aid in his career advancement. The Court is very familiar with *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984), as this Court devised the distribution formula. There Patricia Bullock put on teas and belonged to the Officers Wives Club, etc.

"It does, however, appear that Josephine did sacrifice her advancement by working so that Julio could get his education.

"These factors present somewhat a balancing of detriment suffered and benefits gained by Josephine during the marriage. Josephine had to give up her work career for Julio's. She had been supported by Julio for most of the marriage."

It is apparent that the trial court was concerned with Josephine's contribution to Julio's military career because it was his military pension that was under consideration for division by the trial court. Thus we briefly reiterate the chronology of

---

marital property, not being property at all, in a legal sense, nor is it subject to distribution as alimony, a proper basis for such an award not having been established." Julio did not cross-appeal from the trial court's amended judgment. An appellee who has not cross-appealed may not seek a more favorable result on appeal than he received in the trial court. *Burlington Northern Railroad Company, Inc. v. Scheid*, 398 N.W.2d 114 (N.D.1986); *Tkach v. American Sportsman, Inc.*, 316 N.W.2d 785 (N.D.1982).

3. See 1971 N.D.Sess.Laws, Ch. 311, Sec. 2, repealing Section 28–27–32, N.D.C.C., permitting the Supreme Court, in appeals from any action tried to the court without a jury, to "try anew the questions of fact specified in the statement or in the entire case, ..." Section 1 of that chapter amended Section 28–18–09, N.D.C.C., removing from the statute the exception that a concise statement of the errors of law complained of need not be set forth in appeals triable de novo in the Supreme Court. Section 28–18–09 has been superseded by Rule 59, N.D. R.Civ.P., and Rules 3 and 28 of N.D.R.App.P.

events which leads to this opinion and which reveals that under the holding in *McCarty v. McCarty, supra,* Federal law precluded a State court from dividing military nondisability retirement pay. See, e.g., *Rust v. Rust, supra.* Effective February 1, 1983, and retroactive to June 21, 1981, this prohibition was lifted by the Uniformed Services Former Spouses' Protection Act. See 10 U.S.C. Sec. 1408.

In *Bullock, supra,* 354 N.W.2d at 910, we stated:

"The district court's formula for distributing the retirement pay recognizes the important role a military spouse plays in contributing to the service member's career. It is the contributions and sacrifices made by the military spouses which in part prompted Congress to enact the Uniformed Services Former Spouses' Protection Act."

In making that statement we referred in footnote 3 to a report of the Committee on Armed Services, S.Rep. No. 97–502, 97th Cong., 2d Sess. 6 (1982), reprinted in 1982 U.S.Code Cong. & Ad.News 1555, 1596, 1601, which led to the enactment of the Uniformed Services Former Spouses' Protection Act, permitting the distribution of a military pension to the other spouse. In part, that report stated:

"A recurrent recruiting point that is made to a military couple from the time of the spouse's initial entry into the military is that the spouse is a partner in the member's career. The theme of the 'military family' and its importance to military life is widespread and well publicized. Military spouses are still expected to fulfill an important role in the social life and welfare of the military community."

Although the dissent attempts to disparage the trial court's findings with regard to Josephine's lack of participation in "teas"

and the "Officers Wives Club," it is apparent that in the context of this particular issue of the division of a military pension those matters have more significance than they might have in the ordinary social setting. Without diminishing Josephine's contributions to other aspects of family life, in this particular context of the division of a military pension these matters are entitled to consideration. The trial court's findings thereon are no more clearly erroneous than they were in *Bullock* in which the same trial judge determined that Patricia Bullock, notwithstanding her other actions, was a good military wife who helped significantly to further her husband's career and because of that factor was entitled to a portion of her husband's military pension.

Regardless of our particular attitudes toward these matters of property division or our own agendas, in this instance the clear purpose of Congress in permitting division of a military pension is a matter which the trial court was entitled to consider as it previously did in regard to Gerald and Patricia Bullock and which we approved in *Bullock, supra.* See also *Bullock v. Bullock,* 376 N.W.2d 30 (N.D.1985).

The decision of the trial court is affirmed.

ERICKSTAD, C.J., and GIERKE, J., concur.

LEVINE, Justice, concurring and dissenting.

I agree that the trial court did not err in awarding retirement benefits on a prospective basis only because the trial court found that Josephine received past indirect benefit from substantial payments Julio made to their daughter. However, in my view, the award of only 17.5% of the retirement benefits is clearly erroneous and should be reversed and remanded for redetermination.[1]

---

1. In my defense, and to temper the criticism of my ignorance of or disregard for Rule 52(a), North Dakota Rules of Civil Procedure, I believe the trial judge's memorandum decision and findings of fact are, in part, an explanation of why he did not apply the *Bullock* formula

straight away in this case. I also believe appellant argues not only that the trial court should have applied the *Bullock* formula straight away, as a matter of law, but also that, under the circumstances of this case, *i.e.,* as a matter of fact, the trial court erred in modifying the *Bull-*

In *Anderson v. Anderson,* 390 N.W.2d 554 (N.D.1986), we stated that a property distribution need not be equal in order to be equitable, but any substantial inequality must be explainable. While the *Bullock* formula has not been adopted as the exclusive method for dividing military pensions, I believe the formula provides a suitable benchmark for determining what is an equitable distribution of a military pension. Applying the formula to this case, an equitable distribution would result in Josephine being awarded 41% of the retirement benefits.[2] Thus, the trial court's award of only 17.5% constitutes a substantial inequality which needs to be explained.

The findings made by the trial court upon which the trial court and the majority rely to explain the disparate award are that Josephine had received a more favorable property division than Julio and that there had been no showing of extensive assistance by Josephine to aid in Julio's career advancement. The first finding does not justify the degree of disparity and the second finding is clearly erroneous.

It is clear that Josephine received a more favorable property division at the time of the divorce. However, this does not justify the substantial disparity in the division of the pension because the parties had so little property to distribute. Josephine received the family residence valued at $48,000 but subject to a mortgage of approximately $44,000, most of the furniture and appliances in the house, one car and approximately $600. Julio received some power tools and a car. Because the pension was not subject to distribution at the time of the divorce, it was not valued by the parties. However, it is apparent that the military pension was far and away the most valuable asset of the marital estate. I do not believe the small amount of property awarded to Josephine in the original divorce action would have justified an award

of only 17.5% of the pension then. Nor does it now.

In finding no showing of extensive assistance by Josephine to Julio to aid in his career advancement, the trial court referred to the facts in *Bullock v. Bullock,* 354 N.W.2d 904 (N.D.1984), a case tried by the same trial judge. The trial court noted that "Patricia Bullock put on teas and belonged to the Officers Wives Club, etc." There are two reasons why the trial court's finding of no extensive assistance does not justify the meager award of pension benefits. First, we have never held that a wife must render *extensive* assistance to her husband's career advancement in order to be entitled to an equitable share of the marital property. Second, the finding that Josephine did not extensively assist Julio in his career advancement is clearly erroneous.

This Court has recognized that the tasks performed by a homemaker are significant contributions to the marriage which entitle her to an equitable division of marital assets. *See Briese v. Briese,* 325 N.W.2d 245, 247 (N.D.1982). Due to Josephine's status as a military wife, her role as homemaker and primary caretaker of the parties' two children included additional responsibilities and sacrifices unique to military families. During the seventeen years of marriage that Julio was in the military, the family moved at least fifteen times, including two OSC tours in England, two tours in California, one tour in the Panama Canal Zone, and one tour in North Dakota. These moves meant placing the children in new schools and imposed other responsibilities that come with frequent changes of address. Along with these burdens, Josephine was unable to work out of the home when stationed overseas because American spouses were prohibited from working in a foreign country.

---

*ock* formula to award Mrs. Morales only 17.5% of the military pension.

**2.** Of the 20 years and 10 months Julio spent in the military, he was married to Josephine for 17 years and 3 months. Thus the formula is applied as follows:

$$\frac{\text{years of marriage}}{\text{years in military}} \times \frac{\text{½ of military spouse's}}{\text{retirement benefits}}$$

$$= \frac{17 \text{ years } 3 \text{ mos}}{20 \text{ years } 10 \text{ mos}} \times 50\% = 41\%$$

Additionally, Josephine attended functions sponsored by and for non-commissioned officers' wives. She encouraged Julio to take advantage of educational opportunities while he was in the military. After Julio retired from the military, Josephine worked full time to help support the family while Julio completed his education and obtained a nursing degree. While the record does not contain evidence that Josephine "put on teas" or "belonged to the Officers Wives Club," it can hardly be said that Josephine did not contribute to Julio's career in the military. The trial court did find that Josephine sacrificed her advancement by working so that Julio could get his education. Based on these facts, I believe the trial court's finding that Josephine did not extensively assist Julio in his career advancement is clearly erroneous and that the standard of "extensive assistance," if it means something more than the significant contribution of a homemaker, is incorrect as a matter of law.

I would reverse and remand for a redetermination of an equitable distribution of the pension. Therefore, I dissent.

MESCHKE, J., concurs.