GWENDOLYN A. SURRETTE, Plaintiff v. DONALD R. SURRETTE, Defendant

No. 9329DC373

(Filed 19 April 1994)

1. **Divorce and Separation § 142 (NCI4th)— equitable distribution —value of pension—proper retirement date**

   In calculating the value of defendant's pension plan, the trial court in an equitable distribution action did not err in using the date of separation as defendant's retirement date instead of the date at which defendant became eligible for retirement.

   **Am Jur 2d, Divorce and Separation §§ 948, 949.**

   **Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

   **Necessity that divorce court value property before distributing it. 51 ALR4th 11.**

2. **Divorce and Separation § 142 (NCI4th)— equitable distribution —value of pension—no double discounting**

   There was no merit to plaintiff's contention in an equitable distribution action that the trial court erred in double discounting the present value of defendant's pension, since the trial court did discount the value of the pension at defendant's age 65 to arrive at its present value as of the date of separation, but the trial court's order did not require plaintiff to wait to receive her discounted benefits until defendant retired.

   **Am Jur 2d, Divorce and Separation §§ 948, 949.**

   **Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

   **Necessity that divorce court value property before distributing it. 51 ALR4th 11.**

3. **Divorce and Separation § 142 (NCI4th)— equitable distribution —value of pension—averaging harmless error**

   In an equitable distribution proceeding where the trial court was required to determine the value of defendant's pen-

sion, and the court calculated the present value on the date of separation if defendant began drawing benefits at defendant's earliest retirement age, age 50, and at age 65, the trial court erred in averaging the age 50 and age 65 figures to arrive at the date of separation value, since the court should have chosen the valuation of defendant's pension which assumed defendant would begin drawing benefits at his earliest retirement age; however, plaintiff was not prejudiced by this error because the court's valuation of defendant's pension was greater than the valuation the court should have used.

**Am Jur 2d, Divorce and Separation §§ 948, 949.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

**Necessity that divorce court value property before distributing it. 51 ALR4th 11.**

4. **Divorce and Separation § 144 (NCI4th) — unequal division of marital assets — distributional factors considered — no abuse of discretion**

   The trial court did not abuse its discretion in determining that an unequal division of the marital assets was equitable when the court's findings sufficiently addressed the statutory distributional factors and adequately supported its unequal division.

   **Am Jur 2d, Divorce and Separation § 915 et seq.**

   **Divorce: equitable distribution doctrine. 41 ALR4th 481.**

Appeal by plaintiff from order entered 19 November 1992 by Judge Robert S. Cilley in Transylvania County District Court. Heard in the Court of Appeals 1 February 1994.

Plaintiff appeals from an order of equitable distribution. The parties were married on or about 20 March 1976. The parties separated on 26 January 1991 and were divorced on 5 March 1992. Defendant was employed at E.I. DuPont during the marriage and had worked there since 26 October 1970. On the date of separation, defendant had a vested interest in a defined benefit retirement plan at DuPont. The trial court made the following finding of fact

regarding the present value of the marital portion of defendant's pension plan.

> Assuming that Defendant ceased working for DuPont without prejudice on DOS [date of separation], his retirement plan would begin paying him a monthly lifetime benefit, beginning on one of two dates. Four years from DOS, when he reached 50, Defendant could begin drawing $206 per month. His remaining lifetime is assumed to be 25.5 years from age 50. Or, at age 65, he could begin drawing $823 per month. Using the legal rate (8%) both to capitalize the benefits, and to give the DOS value of the right to receive a benefit in the future, it is the case that the first option yields a DOS value for the pension of $19,520. The second option yields a DOS value of $19,612. Considering the near equivalence of these two projections, the Court finds that Defendant's pension was worth $19,566. Applying the fraction (178/243) mentioned above [Defendant's months in the marriage up to DOS divided by his total months with DuPont] the Court finds that the marital portion of Defendant's pension on DOS had a value of $14,332.

Plaintiff appeals.

*Averette & Barton, by Donald H. Barton, for plaintiff-appellant.*

*Ramsey, Hill, Smart, Ramsey & Pratt, P.A., by Michael K. Pratt, for defendant-appellee.*

EAGLES, Judge.

Plaintiff brings forward several assignments of error. After careful review of the record and briefs, we affirm.

I.

Plaintiff first contends that the trial court abused its discretion in calculating the value of defendant's DuPont pension plan and in valuing the marital portion of the plan. We disagree.

The trial court found that if defendant retired without prejudice on the date of separation, defendant could choose between two alternatives to begin receiving the monthly benefits under his pension. Under the first alternative, defendant would receive $206 per month for the remainder of his lifetime beginning at age 50. Under the second alternative, defendant would receive $806 per month for the remainder of his lifetime beginning at age 65.

The trial court found that defendant's remaining lifetime from age 50 was 25.5 years. Using the legal rate of interest of 8% per annum, the trial court found that the present value of defendant's DuPont pension on the date of separation was $19,520 under the first alternative and $19,612 under the second alternative. Noting that the present value of defendant's pension under the two alternatives was nearly identical, the trial court apparently averaged the values of defendant's pension under both alternatives and found that the present value of defendant's pension on the date of separation was $19,566.

[1] Plaintiff contends that the trial court erred in using the date of separation as defendant's retirement date instead of the date at which defendant became eligible for retirement. Plaintiff argues that defendant's pension should be valued according to the amount defendant would receive upon retirement and that the trial court should have assumed defendant's continuous employment with DuPont until defendant reached the earliest retirement age. We disagree. G.S. 50-20(b)(3) states that a distributive award of a vested pension plan "shall be based on the vested accrued benefit, as provided by the plan or fund, calculated as of the date of separation, and shall not include contributions, years of service or compensation which may accrue after the date of separation." Under G.S. 50-20(b)(3) the value of defendant's pension must be calculated as of the date of separation and years of service after the date of separation are not to be included in the valuation. Here, plaintiff urges us to assume defendant's continued employment with DuPont until defendant reaches retirement age and then to value defendant's pension as of that date. This method of valuation clearly violates the mandate of G.S. 50-20(b)(3). *Bishop v. Bishop*, 113 N.C. App. 725, 732, 440 S.E.2d 591, 596 (1994) (it would have been error for the trial court to have valued defendant's pension assuming defendant's continuous employment beyond the date of separation); *Seifert v. Seifert*, 82 N.C. App. 329, 338, 346 S.E.2d 504, 509 (1986) (trial court correctly used defendant's basic pay at date of separation instead of defendant's basic pay at date of trial in determining the present value of defendant's military pension), *aff'd*, 319 N.C. 367, 354 S.E.2d 502 (1987). Accordingly, plaintiff's contention in this regard is without merit.

[2] Plaintiff also contends that even if the trial court did not err in using the date of separation as defendant's retirement date, the trial court erred in double discounting the present value of

defendant's pension. This contention is equally without merit. Plaintiff relies on language in *Seifert v. Seifert*, 319 N.C. 367, 354 S.E.2d 506 (1987), where our Supreme Court held that the trial court erred in discounting defendant's pension to its present value and then delaying plaintiff's receipt of discounted benefits until defendant retired and began receiving his benefits under the plan. Quoting from this court's opinion in the case, the Supreme Court stated, "This in effect, operated as a double reduction: plaintiff received a discounted value for immediate distribution but nevertheless was required to wait to receive payment until, if and when, the defendant reached retirement and began receiving benefits." *Id.* at 371, 354 S.E.2d at 509 (quoting *Seifert v. Seifert*, 82 N.C. App. 329, 338, 346 S.E.2d 502, 509 (1986)).

Plaintiff argues that defendant's evidence, particularly Exhibit I, showed that the present value of defendant's pension on the date of separation was $84,533.41. The pertinent part of Exhibit I reads as follows:

> Alternative 2: At age 65 to provide $823.00 per month for 15.0 years (life expectancy). At an assumed 8.0% interest rate, the Present Value of an Annuity to provide $823.00 per month for 15 years at [defendant's] age 65, would be $84,533.41. Since he will not be 65 for 213 months from 1/26/91 (separation date), the Present Value of the $84,533.41 on 1/26/91 would be $19,611.75.

Plaintiff argues that $19,611.75 represents the amount necessary to place on deposit on the date of separation to yield $84,533.41 at the time defendant reaches retirement age. Plaintiff contends that this is a double discounting of her benefits under *Seifert*, 319 N.C. 367, 354 S.E.2d 506 (1987), because the court further discounted the present value of defendant's pension to arrive at a figure that would yield the present value amount at defendant's retirement age. We disagree.

In *Seifert, supra,* the plaintiff was forced to wait to receive at a time in the future benefits that had already been discounted to their present value. In *Seifert,* the defendant's pension had been discounted to its present value as of the date of separation. It was effectively discounted again when the plaintiff was forced to wait until a time in the future to receive those discounted benefits. Here, the $84,533.41 represents the present value of defendant's pension when he reaches age 65. This was not the present value

of the pension as of the date of separation. The trial court then further discounted the $84,533.41 to arrive at its present value as of the date of separation. G.S. 50-20(b)(3) requires that the pension be valued as of the date of separation. Unlike the situation in *Seifert,* the order here does not require plaintiff to wait to receive her discounted benefits until defendant retires.

[3]  We note that since this case was heard, this court in *Bishop v. Bishop,* 113 N.C. App. 725, 440 S.E.2d 591 (1994), laid down specific guidelines for valuing defined benefit plans such as the DuPont pension plan at issue here. We stated that:

> First, the trial court must calculate the amount of monthly pension payment the employee, assuming he retired on the date of separation, will be entitled to receive at **the later of the earliest retirement age or the date of separation.** This calculation must be made as of the date of separation and "shall not include contributions, years of service or compensation which may accrue after the date of separation." N.C.G.S. § 50-20(b)(3). . . . Second, the trial court must determine the employee-spouse's life expectancy as of the date of separation and use this figure to ascertain the probable number of months the employee-spouse will receive benefits under the plan. Third, the trial court, using an acceptable discount rate, must determine the then-present value of the pension as of **the later of the date of separation or the earliest retirement date.** Fourth, the trial court must discount the then-present value to the value as of the date of separation. In other words, determine the value as of the date of separation of the sum to be paid at **the later of the date of separation or the earliest retirement date.** . . .

*Id.* at ---, 440 S.E.2d. at 595-96 (emphasis added). Here, the trial court calculated the present value of defendant's pension on the date of separation if he began drawing benefits at his earliest retirement age, age 50 (Alternative 1) and at age 65 (Alternative 2). The trial court found the present value of defendant's pension to be $19,520 on the date of separation assuming defendant began drawing benefits at age 50. The trial court found the present value of defendant's pension to be $19,612 on the date of separation if defendant delayed drawing benefits until age 65. The trial court then averaged these two figures and found the present value of defendant's pension to be $19,566 on the date of separation. We

note that the trial court erred in averaging the age 50 and age 65 figures to arrive at the date of separation value of defendant's pension. Instead, the trial court should have chosen the valuation of defendant's pension under Alternative 1 ($19,520) because it assumed that defendant would begin drawing benefits at his earliest retirement age as our holding in *Bishop, supra,* requires. However, plaintiff was not prejudiced by this error because the trial court's valuation of defendant's pension ($19,566) was greater than the valuation that the trial court should have used ($19,520). Accordingly, we conclude that under these facts, the trial court's error in calculating the value of defendant's pension plan was harmless error.

## II.

In a related assignment of error, plaintiff contends that the trial court erred in valuing the marital portion of defendant's pension because of it its underlying error in calculating the present value of defendant's pension plan. *See* I, *supra.* Since we have already concluded that the trial court did not commit prejudicial error in calculating the present value of defendant's pension plan to be $19,566, this assignment of error is also overruled.

## III.

[4] Plaintiff further contends that the trial court abused its discretion in determining that an unequal division of the marital assets was equitable. We disagree. Under G.S. 50-20(c), an equal division of marital property is mandatory unless the trial court determines that an equal division is not equitable. *White v. White,* 312 N.C. 770, 776, 324 S.E.2d 829, 832 (1985). G.S. 50-20(c) lists twelve distributional factors the court must consider in determining whether an equal division of marital property is equitable. The party seeking an unequal division must introduce evidence concerning one or more of these factors and prove by a preponderance of the evidence that an equal division would be inequitable. *Id.* If evidence of one or more of the factors listed in G.S. 50-20(c) is presented, the trial court's findings of fact must show that the trial court considered those factors. *McIver v. McIver,* 92 N.C. App. 116, 127, 374 S.E.2d 144, 151 (1988). The trial court must then exercise its discretion to "make an equitable division of the marital property by balancing the evidence presented by the parties in light of the legislative policy which favors equal division." *White v. White,* 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). The trial court is vested with wide discretion in making an equitable division of marital property under

SURRETTE v. SURRETTE

[114 N.C. App. 368 (1994)]

G.S. 50-20 and its order of distribution will not be disturbed on appeal absent a showing that the distribution was manifestly unsupported by reason. *Smith v. Smith*, 111 N.C. App. 460, 500, 433 S.E.2d 196, 220 (1993).

Here, the trial court found the following:

30. The Court is persuaded that an effectively equal division of the parties' marital property is equitable, but because of the various matters noted above, to achieve that effect it is necessary that the division percentage be unequal. Upon due consideration, the Court had calculated, and accordingly finds that an equitable distribution will be achieved by a division in the following proportions: Plaintiff, 48.7%; Defendant, 51.3%.

Plaintiff contends that the trial court's order does not specify which of the twelve distributional factors in G.S. 50-20(c) the court relied upon in determining that an equal division was inequitable. We disagree. The trial court here made the following findings of fact:

19. As of 6/26/92, Defendant had paid $3300 to Plaintiff under a rent agreement between the parties, such that Defendant is stipulated to receive credit for one-half that amount in the division made herein.

20. The Court notes, and considers as a distributional factor, the fact that Defendant has, since DOS [date of separation], paid $5,582.83 on the Chrysler's debt (see finding 4 above), $138 on Plaintiff's life insurance policy, $70.81 on Plaintiff's Sears charge account, and $461.30 on Plaintiff's car insurance (see finding 4).

21. Defendant made certain money payments after separation, to wit:

| | |
|---|---|
| Real estate appraisal | $250.00 |
| Visa credit card | 259.83 |
| Belk credit card | 60.24 |
| County property taxes | 472.57 |
| Homeowner's insurance | 456.00 |

The real estate appraisal was obtained for this litigation. The Visa debt accrued during the marriage, and Defendant has paid it off. The Belk debt was Plaintiff's post-separation debt. It is noted in connection with the taxes and insurance that

Defendant had the use of the marital home since DOS. The Court has considered the Visa payment, the taxes, and the insurance in arriving at the distributional percentage used herein. Defendant is entitled to a direct credit for the Belk payment.

The trial court clearly relied upon these findings in determining that an unequal division was equitable. In these findings, the trial court noted which of defendant's payments it considered as distributional factors and referred indirectly to these findings in its finding that an unequal division was equitable. Although the trial court did not explicitly recite these distributional factors in its finding that an unequal division was necessary, the order in paragraph 30 generally referred to "the various matters noted above." We note that while "the trial court [is] not required to recite in detail the evidence considered in determining what division of the property would be equitable, it [is] required to make findings sufficient to address the statutory factors and support the division ordered." *Armstrong v. Armstrong*, 322 N.C. 396, 405, 368 S.E.2d 595, 600 (1988).

The trial court's findings here sufficiently address the statutory factors and adequately support its unequal division. Plaintiff here did not except to any of the findings concerning the distributional factors (Findings 19-21). From our examination of the record, we conclude that there is sufficient evidence to support them. A finding that a single distributional factor supports an unequal division will be upheld on appeal if that finding is supported by the evidence. *Andrews v. Andrews*, 79 N.C. App. 228, 234, 338 S.E.2d 809, 814 (1986) (disapproved on other grounds in *Armstrong v. Armstrong*, 322 N.C. 396, 368 S.E.2d 595 (1988)). Accordingly, we hold that the trial court did not abuse its discretion in ordering an unequal division of the marital property.

## IV.

In plaintiff's remaining assignments of error, plaintiff failed to cite in her brief any case authority or statutory support for her contentions. Accordingly, these assignments of error are deemed abandoned. N.C.R. App. P. 28(b)(5); *Joyner v. Adams*, 97 N.C. App. 65, 71, 387 S.E.2d 235, 239 (1990).

For the reasons stated, we affirm the judgment of the trial court.

CITY OF ASHEVILLE v. WOODBERRY ASSOCIATES

[114 N.C. App. 377 (1994)]

Affirmed.

Judges JOHNSON and LEWIS concur.