John WELDER, Plaintiff and Appellee,

v.

Sonja WELDER, Defendant and Appellant.

Civ. No. 930402.

Supreme Court of North Dakota.

Aug. 24, 1994.

Melvin L. Webster (argued), of Webster & Engel, Bismarck, for plaintiff and appellee.

Sherry Mills Moore (argued), of Foss & Moore, Bismarck, for defendant and appellant. Appearance by appellant Sonja Welder.

MESCHKE, Justice.

Sonja Welder appeals from a divorce decree that divided marital property with John Welder, but declined to award Sonja spousal support and attorney fees. We reverse and remand for further proceedings.

John and Sonja were married in 1970 and have two teen-age sons. When they married, John was serving in the military and Sonja had completed her third year of college. Sonja accompanied John overseas where he was stationed during the first year of the marriage. When they returned to North Dakota, Sonja completed college with a degree in elementary education. She has since acquired 32 hours of post-graduate credit.

John became employed with Job Service of North Dakota and, during the early years of the marriage, worked at various cities in the state before settling in Bismarck. John currently earns $47,000 per year as director of unemployment for Job Service, while Sonja earns $27,000 per year as a sixth grade public school teacher in Bismarck.

They separated in January 1992, and John sued Sonja for divorce the following May. Attempts at reconciliation and mediation failed. In May 1993, John and Sonja signed a stipulation for joint custody of their sons that was approved by the court. The trial covered property division, child support, and spousal support. The marital property consisted mainly of the proceeds from the sale of their home, their pension plans, and various items of personal property.

The trial court awarded John property that it valued at $39,586. The court awarded Sonja property that it valued at $42,201. The court decided that an award of spousal support was "not justified," reasoning that Sonja "has not been disadvantaged by the marriage or divorce," having "completed her Bachelor's Degree [and] acquired 30 hours of post graduate education." The court also refused to award Sonja attorney fees because both of them "are employed and earn substantial salaries," and Sonja was awarded $3,000 more in property than John.

On appeal, Sonja asserts that the trial court erroneously valued their marital property and erroneously declined to award spousal support and attorney fees.

## I

■ A trial court's findings on the valuation and the distribution of marital property will not be set aside on appeal unless they are clearly erroneous under NDRCivP 52(a), or they are induced by an erroneous conception of the law. *Steckler v. Steckler*, 519 N.W.2d 23, 24–25 (N.D.1994). We address three property questions.

## A

The trial court adopted John's valuation of the parties' pension plans. John's certified public accountant, Thomas Ault, advocated a liquidation method of valuing the pension plans. Ault testified that this method was the "most solid way to value" the plans because "[t]here was a large amount of uncertainty in the assumptions that were to be used in computing it under any other method." He calculated that the net after-tax proceeds from an immediate lump-sum distribution of John's retirement plan would be $27,266. Ault also calculated that the net after-tax proceeds from an immediate lump-sum distribution of Sonja's retirement plan would be $15,133. In arriving at these figures, Ault applied each parties' marginal tax rate and also deducted a 10 percent penalty for early distribution of the retirement accounts.

Sonja's certified public account, Alton Nitschke, advocated a present value method of determining the value of the parties' pension plans. Each has a defined benefit plan that carries no relationship between the employee's contribution to the plan and the retirement benefit; both are guaranteed a certain payment at the time they retire. Nitschke reduced to present value the total payments that would be made to the retiree from the time of anticipated date of commencement, age 60 for John and age 65 for Sonja, and their life expectancies at that time, 17.51 years for John and 17.32 years for Sonja. In these calculations, Nitschke figured that the parties earned no further benefits after the date of divorce and that they accrued no more years of service at their jobs. Nitschke testified that to pay for John's defined benefit at retirement of $1,304 per month for the rest of his life, $68,242 would have to be invested today and earn seven percent per year. Nitschke testified that to pay for Sonja's defined benefit at retirement of $465 per month for the rest of her life, $11,245 would have to be invested today and likewise earn seven percent per year.

Sonja argued in the alternative that use of a formula based on this court's decision in *Bullock v. Bullock*, 354 N.W.2d 904 (N.D. 1984), would also be appropriate. In *Bullock*, we approved a formula for presently apportioning a vested, but presently inaccessible, military pension. The *Bullock* formula

uses the number of years of marriage while the pension was earned, divided by the number of total years in earning the pension, times one-half of the later retirement payout to calculate a divorced spouse's apportionment. *See Bullock,* 354 N.W.2d at 908–909. We said that the formula "adequately determines the actual proportion of potential retirement pay derived as a result of the marriage." *Bullock,* 354 N.W.2d at 910. Relying on *Bullock,* Sonja argued that because the parties were married for the entire time John has been employed, 21.30 years, she should receive one-half of that, 10.65 years, divided by the total number of years John works, times the actual monthly benefit at retirement.

In rejecting use of the present value approach and the *Bullock* formula, the trial court reasoned:

> [Sonja] urges the Court to use the *Bullock* ... formula to compute the retirement. The Court does not do so. The *Bullock* formula is utilized in a military retirement situation, which is not applicable here. *Morales v. Morales,* 402 N.W.2d 322 (N.D. 1987); *Anderson v. Anderson,* 504 N.W.2d 569 (N.D.1993). The trial court is required to discount to present value cash payments without interest as part of a property distribution. *Sateren v. Sateren,* 488 N.W.2d 631 (N.D.1992). The failure to do so is reversible error. *Kitzmann v. Kitzmann,* 459 N.W.2d 789 (N.D.1990). The proposal by [John] reduces the retirements to present value based upon the testimony presented here.

Because the trial court's application of John's liquidation method was made under the mistaken view that Sonja's present value approach and the *Bullock* formula were inapplicable as a matter of law under these circumstances, we conclude that the trial court's valuation of the parties' retirement plans is clearly erroneous.

■ First, the trial court erred in its interpretation of this court's decision in *Sateren v. Sateren,* 488 N.W.2d 631, 633 (N.D. 1992) (footnote omitted), where we said:

> We have consistently held that "periodic cash payments without interest awarded as part of a property distribution must be

discounted to present value in determining whether or not the distribution is equitable." *Lucy v. Lucy,* 456 N.W.2d 539, 542 (N.D.1990); see also *Pankow v. Pankow,* 347 N.W.2d 566 (N.D.1984); *Tuff v. Tuff,* 333 N.W.2d 421 (N.D.1983). The reason for the rule is obvious: if the payments are not discounted to present value, the court is relying upon an artificial value when it distributes the property. When one party receives property which is clearly worth less than the value ascribed to it by the trial court, a reviewing court cannot determine whether the resulting property distribution is equitable. Therefore, it is necessary to discount periodic payments to present value.

We also said that when interest is awarded on a cash property distribution by periodic payments, the dollar value of the interest paid should not be included when calculating the value of the property distributed to each spouse. *Sateren,* 488 N.W.2d at 633 n. 1. This is so because of the disadvantage to the payee caused by considering interest not only for the purpose of compensation for delay in receipt of the share of the marital estate, but also to increase the amount of the basic distribution to determine if the distribution is equitable in the first instance. *See Kitzmann v. Kitzmann,* 459 N.W.2d 789, 793 (N.D.1990). In *Sateren,* the trial court did not provide for interest on the periodic payments and did not discount the payments to present value when calculating the property distribution. In *Kitzmann,* no present value determination of a series of mortgage payments was made, but interest was added to the principal amount and included in the valuation of the marital estate. In distributing marital property, a trial court can properly choose to discount future payments to present value or to add interest to the principal payments, but it cannot properly refuse to do either or proceed to do both.

Here, Sonja's expert computed a present value of a retirement plan through the use of a presumed discount or interest rate. He did not add interest after doing so. An appropriate discount rate must be applied to arrive at a present value figure. *See generally In re Marriage of Gavito,* 794 P.2d 1377,

1378 (Colo.Ct.App.1990); *In re Marriage of Cope,* 805 S.W.2d 303, 305–306 (Mo.Ct.App. 1991); *Surrette v. Surrette,* 114 N.C.App. 368, 442 S.E.2d 123, 125 (1994). Sonja's expert did not violate our rulings in *Sateren* and *Kitzmann.*

■ Second, we reject the trial court's assumption that the *Bullock* formula is applicable only to military pensions. Although the *Bullock* formula originated in a case involving military retirement benefits, we have long suggested under some circumstances the use of a formula to divide pensions that requires both parties "to share in the ultimate benefits and risks that are involved." *Glass v. Glass,* 344 N.W.2d 677, 679 (N.D. 1984). We have specifically approved *Bullock*-type formulas for distributing non-military pensions. *See, e.g., Zander v. Zander,* 470 N.W.2d 603, 605–606 (N.D.1991); *Lentz v. Lentz,* 353 N.W.2d 742, 743 (N.D.1984). There is no legal reason why the trial court could not have used *Bullock*-type formulas for both pensions here.

■ Third, liquidation value is the least favored method of valuing any type of marital property in a divorce. *See Kaiser v. Kaiser,* 474 N.W.2d 63, 68 (N.D.1991); *Heggen v. Heggen,* 452 N.W.2d 96, 99 (N.D.1990). Here, neither of the parties testified that they intended to quit their jobs or cash-out their retirement plans. In light of this undisputed evidence, the trial court further compounded its mistake by considering the income tax consequences of a withdrawal of funds from the pension plans when the parties had no current intentions to withdraw those funds. In *Kaiser,* 474 N.W.2d at 69–70, we said that

> a trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax liability is required by the dissolution or will occur within a short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about possible future tax consequences; and (4) the tax liability can be reasonably predicted.

Consideration of the tax consequences in this case was improper.

■ Division of retirement benefits at the time of divorce is preferred if sufficient assets are then available to divide the present value of the retirement benefits without causing undue hardship to the parties and where testimony on valuation is not speculative. *Steckler,* 519 N.W.2d at 26. But the trial court may have correctly concluded that the present value method of valuation was inappropriate in this case. Nitschke arrived at a figure of $11,245 as the present value of Sonja's retirement plan. However, the administrator for Sonja's retirement plan testified that the present cash-out value of her plan was $19,610.58. Because the theoretical present cash value of Sonja's retirement plan is considerably less than the cash value she would actually receive if she terminated her employment, the trial court could reasonably have considered the present value method unacceptably flawed or speculative. The court may also have considered that there were insufficient assets for an immediate distribution. If that is the case, however, the liquidation method of valuation is not the appropriate alternative. As suggested in *Anderson v. Anderson,* 504 N.W.2d 569, 571 n. 2 (N.D.1993) and *Zander,* 470 N.W.2d at 605–606, an award of future payments according to a fixed percentage under a *Bullock*-type formula is preferable.

We conclude that the trial court clearly erred in valuing the parties' pension plans, the major assets of the marital estate. We remand for consideration of an alternative method of valuation and distribution.

## B

■ Sonja argues that the trial court erroneously excluded John's CRP contract as a marital asset. John and his father have farmed land for John's aunt under a verbal agreement. In the late 1980s, a quarter section of the land was placed under a 10-year contract with the Conservation Reserve Program. *See generally* 11 Harl, *Agricultural Law* § 91.03[4][e] (1994); 7 C.F.R. Part 704 (1994). Under this program, the federal government "entered into contracts with owners and operators of highly erodible cropland to take such cropland out of crop production and place it in conservation and soil

and water resource improving the use in exchange for payments in cash or commodities." 11 Harl, at p. 91–79 (footnotes omitted). Since then, John has received from the federal government $2,193 per year, before taxes and expenses, as the operator of the farm. John's aunt, the owner of the land, has received the same amount on a yearly basis. On the property and debt listing, John valued the four years remaining on the CRP contract at $6,237 after taxes. Sonja valued the CRP contract at $11,000, an amount that was calculated before deducting taxes and expenses and included the most recent payment he had already received. John argued that his continuing receipt of these funds is too speculative because his aunt has entered a nursing home and may need to sell the land. According to John, if the land were sold, he would not receive any further income under the contract.

The trial court found:

John ... may receive income as the result of a CRP contract. This contract is not considered an asset because any income would be for future services which he will provide as an operator at his expense. Further, if the land is sold, the contract will be transferred with the land, and the sale of the land is not within his control.

We agree with Sonja that the trial court erred in finding that the CRP contract has no value whatsoever to the marital estate. John's expenses associated with the land since the inception of the CRP contract have been minimal. Furthermore, in *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 638 n. 8, 544 P.2d 561, 566 n. 8 (1976), the court said "[t]he fact that a contractual right is contingent upon future events does not degrade that right to an expectancy." Even if the CRP contract may be difficult to value, we believe it is an asset with some value that should have been included in the marital estate. At the very least, just as a formula for the future division of a pension allows for the parties to share the risks and the benefits, the court could have awarded a percentage of the net proceeds of the contract for as long as it is effective. The trial court's finding that the CRP contract was not

an asset to be considered in the divorce as marital property is clearly erroneous.

## C

Sonja also asserts that the trial court's property division is inequitable because it excluded post-separation assets John had received and spent but included certain assets she had received and spent, and included debts John had incurred after the parties separated but excluded debts Sonja had incurred after separation. There is conflicting evidence about these assets and debts. Upon our review of the record, we find evidence to support the trial court's treatment of them. In any event, because we remand for a proper valuation and distribution of the major assets of the marital estate, the trial court is free to evenhandedly reconsider these arguments on remand.

## II

■ Sonja asserts that the trial court erred in refusing to award spousal support. As *Beals v. Beals*, 517 N.W.2d 413, 415–416 (N.D.1994), said, spousal support determinations are findings of fact that will not be reversed on appeal unless clearly erroneous.

In *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994), we recently explained:

A spouse must be disadvantaged as a result of the divorce for rehabilitation or maintenance to be appropriate. *Weir [v. Weir*, 374 N.W.2d 858, 862 (N.D.1985)]. We prefer temporary rehabilitative support to remedy this disadvantage, and indefinite permanent support is appropriate only if a spouse "cannot be adequately restored to independent economic status." *Heley [v. Heley*, 506 N.W.2d 715, 720 (N.D. 1993)]. Therefore, a trial court should consider rehabilitative support first because it may eliminate the need for permanent support.

The purpose of rehabilitative support is to provide a disadvantaged spouse the opportunity to become self-supporting through additional training, education, or experience. *LaVoi [v. LaVoi*, 505 N.W.2d 384, 386 (N.D.1993)], *citing Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). A spouse's need for rehabilitation is not limit-

ed to the "prevention of destitution," but can also be based on their standard of living before the divorce. *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992). Rehabilitative support can "balanc[e] the burdens created by the separation" if the parties do not have enough income to maintain the same standard of living apart as they enjoyed together. *Wahlberg, id., citing Weir,* 374 N.W.2d at 864.

As *Wiege* demonstrates, both rehabilitative and permanent support may be necessary under some circumstances to equitably share the reduction in standard of living caused by the divorce.

■ Sonja requested that she receive $350 per month for a period of ten years as spousal support. The trial court, however, found that Sonja had not been disadvantaged by the marriage or divorce and further found that her estimate of monthly expenses was "exaggerated." The trial court's finding that Sonja had not been disadvantaged is not supported by the evidence.

Sonja earns $27,000 annually as a teacher. John earns $47,000 at Job Service. The parties were married for 23 years. John's career had priority during the marriage. The family moved five times during a five-year period to further John's Job Service career. The many moves made it difficult for Sonja to keep a teaching job or to apply for teaching jobs for the next school year. Although she was a substitute teacher at times, she also held a variety of other jobs during the early years of the marriage. Sonja also worked only part-time outside the home until the children began attending school. She was unable to seriously pursue her teaching career for seven years. As a result, Sonja earns $5,000 per year less than she would if she had taught school during those early years. Correlatively, even though Sonja plans to continue to obtain post-graduate credits, she will have a smaller pension-creating ability and will maximize her earnings at a level far below John's. If still married, Sonja would be participating as a spouse in the greater benefits derived from the priority the family gave John's career.

■ John argues that Sonja failed to introduce any evidence regarding the standard of living she and John had maintained prior to their separation or any evidence other than her estimate of living expenses to prove her current standard of living and what it would take to maintain it. Although continuance of a standard of living and balancing financial burdens created by the separation are valid considerations in spousal support determinations, *see Bagan v. Bagan,* 382 N.W.2d 645, 646 (N.D.1986); *Weir,* 374 N.W.2d at 864, they are not the sole considerations. In *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992), we pointed out our cases

> affirming rehabilitative spousal support awards to parties that have foregone opportunities or lost advantages as a consequence of the marriage, *e.g. Ness v. Ness,* [467 N.W.2d 716 (N.D.1991) ], and to parties that have contributed during the marriage to the supporting spouse's increased earning capacity, *e.g. Hanson v. Hanson,* 404 N.W.2d 460 (N.D.1987). The need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution. Rather, rehabilitative spousal support must serve one of the legitimate goals for such an award and be supported by the record.

*See also Culver v. Culver,* 497 N.W.2d 431, 433–434 (N.D.Ct.App.1993). Sonja did not ask that the trial court continue her standard of living but asked that "the disparate disadvantage of the dissolution of the marriage be somewhat leveled." *See Wiege,* 518 N.W.2d at 711 (substantial disparity in earning abilities justifies rehabilitative support). Considering Sonja's foregone opportunities and lost advantages as a consequence of the marriage, we believe the trial court's finding that Sonja has not been disadvantaged by the marriage and divorce is clearly erroneous.

■ Because a difference in earning power is a proper factor both for dividing property and for prescribing spousal support, questions of property distribution and spousal support often need to be examined and dealt with together. *Heley,* 506 N.W.2d at 719; *Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D. 1990). We are remanding for reconsidera-

tion of the property division. Therefore, we also remand for reconsideration of the possibility of awarding spousal support in light of the trial court's subsequent property division and John's needs and ability to pay.

### III

■ Sonja asserts that the trial court erred in refusing to award attorney fees. The trial court denied attorney fees, in part, because Sonja had been awarded almost $3,000 more than John in the property division. A principal consideration in determining whether to award attorney fees in marital disputes is each party's ability to pay. *Heley*, 506 N.W.2d at 722; *Pozarnsky v. Pozarnsky*, 494 N.W.2d 148, 151 (N.D.1992). As in *Heley*, because matters of property division and spousal support will be adjusted on remand, we also remand the matter of attorney fees for conjunctive reconsideration.

The divorce decree is reversed on property division, spousal support, and attorney fees, and those matters are remanded for reconsideration consistent with this opinion.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and LEVINE, JJ., concur.